In re: MOTIONS OF DOW JONES & COMPANY, INC., et al.

Nos. 98–3033 and 98–3034.

United States Court of Appeals, District of Columbia Circuit.

Argued April 8, 1998.

Decided May 5, 1998.

Theodore J. Boutrous, Jr. argued the cause and filed the briefs for appellants.

W. Neil Eggleston argued the cause for appellee The White House. With him on the brief was Charles F.C. Ruff, Counsel to the President.

David E. Kendall argued the cause for appellee President William J. Clinton. With him on the brief was Max Stier.

·Jamie S. Gardner argued the cause for appellee Francis D. Carter. With her on the brief was Charles J. Ogletree, Jr.

Nathaniel H. Speights argued the cause and filed the brief for appellee Monica Lewinsky.

Before: RANDOLPH, ROGERS, and TATEL, Circuit Judges.

RANDOLPH, Circuit Judge:

On January 16, 1998, at the request of the Attorney General, a special division of this court issued an order expanding the prosecutorial jurisdiction of Independent Counsel Kenneth W. Starr.[1] The order—which the special division released to the public—authorized Starr to investigate "whether Monica Lewinsky or others suborned perjury, ob-

---

1. Judges Sentelle, Butzner, and Fay sit on the Division for the Purpose of Appointing Independent Counsels.

structed justice, intimidated witnesses, or otherwise violated federal law ... in dealing with witnesses, potential witnesses, attorneys, or others concerning the civil case *Jones v. Clinton*"; and "to investigate any person or entity who has engaged in unlawful conspiracy or who has aided or abetted any federal offense, as necessary to resolve" the first matter.

Thereafter, a grand jury here began receiving evidence about Monica Lewinsky and President Clinton, and others, or so appellants in this case tell us. Since mid-January the press has staked out the courthouse, photographing and attempting to intercept anyone who, because of his or her suspected status as witness or lawyer in the investigation, might shed light on the grand jury's progress. Some individuals have paused to give their versions of what transpired during their grand jury appearances; others have refused to be interviewed or to give a public statement.

The press, naturally desiring more information, moved for access to district court hearings and pleadings related to the grand jury's investigation.[2] Under Rule 407(3) of the United States District Court for the District of Columbia, the Chief Judge shall "hear and determine all matters relating to proceedings before the grand jury." D.D.C.R. 407(3). Such "ancillary" matters may arise for a number of reasons. Grand juries summon witnesses and documents with subpoenas. Witnesses, including custodians of documents, report on the scheduled date not to a courtroom, but to a hallway outside the room where the grand jury is sitting. The witness must enter the grand jury room alone, without his or her lawyer. No judge presides and none is present. *See* SARA S. BEALE ET AL., GRAND JURY LAW AND PRACTICE § 4.10, at 4–44 (2d ed.1997). Inside the grand jury room are sixteen to twenty-three grand jurors, one or more prosecuting attorneys, and a court reporter. 18 U.S.C. § 3321; FED.

R.CRIM.P. 6(a)(1), (d) & (e). The witness is sworn, and questioning commences, all to the end of determining whether "there is adequate basis for bringing a criminal charge." *United States v. Williams*, 504 U.S. 36, 51, 112 S.Ct. 1735, 1744, 118 L.Ed.2d 352 (1992). Other than witnesses, each person present in the grand jury room or otherwise assisting the prosecutor is forbidden from disclosing "matters occurring before the grand jury," FED.R.CRIM.P. 6(e)(2) & (3)(A)(ii).

■ "Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length." *Williams*, 504 U.S. at 47, 112 S.Ct. at 1742. Still, at many points, from service of the subpoena through the completion of the witness's grand jury appearance, judicial proceedings relating to the grand jury may take place. The judge may be called upon to decide a witness's motion to postpone the date of testimony or to quash the subpoena. If a witness refuses to answer questions on the basis of a testimonial privilege, such as attorney-client or husband-wife, the grand jury may seek a court order compelling the witness to answer. This may be done forthwith, through an oral presentation to the court, *see, e.g., Levine v. United States*, 362 U.S. 610, 612, 80 S.Ct. 1038, 1040–41, 4 L.Ed.2d 989 (1960), or upon the filing of pleadings, followed by a hearing. A hearing will also be needed if a witness asserts his or her privilege against self-incrimination, and the prosecutor seeks an order from the court granting the witness immunity. *See* 18 U.S.C. § 6003(a).

■ These appeals are from the Chief Judge's denial of motions concerning two such ancillary proceedings and from her denial of a broader motion to govern access to all future ancillary proceedings stemming from the grand jury's investigation.[3] In

---

**2.** Appellants are Dow Jones & Company, Inc.; the Los Angeles Times; ABC, Inc.; the Associated Press; Cable News Network, Inc.; CBS Broadcasting, Inc.; Fox News Network; National Broadcasting Company, Inc.; The New York Times Company; Time Inc.; USA Today; and The Washington Post.

**3.** While no one has questioned our jurisdiction to hear these appeals, we have assured ourselves that appellate jurisdiction exists. *See* 28 U.S.C. § 1291; *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1330 (D.C.Cir.1985). We

chronological order, the press filed its first motion on March 5th, seeking "access to any and all proceedings and papers . . . as well as any orders or rulings issued by the Court concerning assertions by Francis D. Carter of objections to the grand jury subpoena." The motion also requested "access to transcripts" of hearings to the extent they had "already occurred." (Carter, we are told, was an attorney for Monica Lewinsky.) Next, on March 9th, the press moved for the establishment of "procedures relating to public access to judicial proceedings and records in connection with the investigation being conducted by Independent Counsel Kenneth W. Starr." On March 11th, the press moved for "access to any hearings, and transcripts of such hearings . . . concerning the motion to show cause filed by President Clinton against Independent Counsel Kenneth W. Starr for alleged violations of grand jury secrecy."

We will take up first the motion requesting the Chief Judge to establish procedures governing public access to the hearings and to papers in all of the proceedings relating to the grand jury. Although the press framed its motion in terms of access to proceedings "to resolve privilege claims or other legal issues," it seems mainly interested in proceedings involving the assertions of testimonial privileges in response to grand jury subpoenas, and in President Clinton's motion for an order to show cause why the Office of the Independent Counsel should not be found in contempt. Among other things, the press requested the Chief Judge to provide advance public notice of hearings; to grant its counsel opportunity to be heard regarding closure; and to require "all motions, orders, and other judicial records filed in connection with the grand jury proceeding be docketed on the public record." The Chief Judge ruled that the press had neither a common

law nor a First Amendment right of access and declined to adopt "movants' extraordinary procedures." The Chief Judge also found it "inappropriate and contrary to Rule 6(e) to require any materials filed in connection with grand jury proceedings to be docketed on the public record or unsealed without an express order from this Court. Even releasing the matters to be heard by the Court runs the risk of disclosing 'matters occurring before the grand jury.' FED. R. CRIM P. 6(e)." The press maintains that the "blanket closure of judicial proceedings" and the failure to provide "procedural safeguards prior to closure" violate the First Amendment. *See* Brief for Appellants at 9.

A settled proposition, one the press does not contest, is this: there is no First Amendment right of access to grand jury proceedings. The Fifth Amendment makes the "Grand Jury" an essential element of the federal criminal justice system. A grand jury is a body that conducts its business in private. The Framers knew this as well as we do. "Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19 n. 9, 99 S.Ct. 1667, 1672–73 n. 9, 60 L.Ed.2d 156 (1979); *see also United States v. Procter & Gamble,* 356 U.S. 677, 681, 78 S.Ct. 983, 985–86, 2 L.Ed.2d 1077 (1958); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240–41, 3 L.Ed.2d 1323 (1959).

The secrecy of grand jury proceedings is today preserved through FED. R.CRIM. P. 6(e). Grand jurors, prosecutors, stenographers and others are forbidden from disclosing "matters occurring before the grand jury." [4] This phrase—"matters occurring be-

---

are also certain that although part of the case deals with the Chief Judge's refusal to allow the press to attend hearings now concluded, the capable-of-repetition-yet-evading-review doctrine saves the case from mootness. *See Gannett Co. v. DePasquale,* 443 U.S. 368, 377–78, 99 S.Ct. 2898, 2904–05, 61 L.Ed.2d 608 (1979); *Press–Enterprise Co. v. Superior Court (Press–Enterprise II),* 478 U.S. 1, 6, 106 S.Ct. 2735, 2739, 92 L.Ed.2d 1 (1986).

4. Rule 6(e)(2) General Rule of Secrecy.

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on

fore the grand jury"—includes not only what has occurred and what is occurring, but also what is likely to occur. Encompassed within the rule of secrecy are "the identities of witnesses or jurors, the substance of testimony" as well as actual transcripts, "the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.1980) (en banc); *Fund for Constitutional Gov't v. National Archives & Records Serv.,* 656 F.2d 856, 869 (D.C.Cir. 1981).

With respect to ancillary judicial proceedings, "the court shall order a hearing on matters affecting a grand jury proceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury." FED. R.CRIM. P. 6(e)(5).[5] Furthermore, "records, orders and subpoenas relating to grand jury proceedings shall remain under seal to the extent and for such time as necessary to prevent disclosure of matters occurring before a grand jury." FED. R.CRIM. P. 6(e)(6). The Advisory Committee believed that the rules did "not violate any constitutional right of the public or media to attend" such ancillary proceedings because no such constitutional right exists. FED. R.CRIM. P. 6(e)(5) advisory committee's note. The Supreme Court and Congress must have thought the same. *See* Supreme Court Order of April 28, 1983, authorizing the Chief Justice to transmit then proposed Rules 6(e)(5) and 6(e)(6) to Congress.

■ In light of Rule 6(e), the constitutionality of which is not questioned, the press must take a narrow view of the purported First Amendment right of access. It cannot, and does not, claim a right to attend every minute of every hearing ancillary to the grand jury's investigation and it does not seek full disclosure of all pleadings and other papers filed in connection with such hearings. The press is not entitled, by the Constitution or by rule, to information about "matters occurring before the grand jury." But the press thinks the First Amendment entitles it to whatever else remains.

As to pleadings and papers, the press has no basis for complaint. A rule of the district court, not mentioned in the press's opening or reply brief, gives it the most it could expect from its constitutional claim. Local Rule 302 deals with motions, applications, and orders "filed in connection with a grand jury subpoena or other matter occurring before a grand jury."[6] "Papers, orders, transcripts of hearings subject to this Rule, or portions thereof, may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." D.D.C.R. 302.[7] A portion of a transcript

---

any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

5. "Counsel or others allowed to be present at the closed hearing may be put under a protective order by the court." FED. R.CRIM. P. 6(e)(5) advisory committee's note.

6. Local Rule 302 provides:

A motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury, all other papers filed in support of or in opposition to such a motion or application, and all orders entered by the Court in connection therewith, shall be filed under seal. Such a motion or application shall be assigned a Miscellaneous case number. All hearings on matters affecting a grand jury proceeding shall be closed, except for contempt proceedings in which the alleged contemnor requests a public hearing. Papers, orders and transcripts of hearings subject to this Rule, or portions thereof, may be made public

by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury.

7. Other district courts similarly implement FED. R.CRIM. P. 6(e)(5) and (6). *See, e.g.,* C.D. CAL. R. 8.3 (proceedings involving applications for immunity, motions to quash subpoenas, and "other contested matters affecting grand jury proceedings prior to the indictment stage" shall be "closed to the public"); N.D. ILL. R. 1.04 ("all records ... which relate to grand juries including grand jury subpoenas ... docket of grand jury proceedings, motions and orders relating to grand jury subpoenas ... shall be suppressed and released only on order of the Chief Judge"); S.D. IND. R. 10.1(c) ("All motions, orders, and other filings pertaining to matters before [the] grand jury shall ... be maintained by the Clerk under seal, without necessity for a motion to seal or order"); D. MASS. R. 106.1(b) (all subpoenas, motions, pleadings, and other documents filed with the clerk concerning or contesting grand

filed in these appeals and the representations of non-press counsel at oral argument convince us that the Chief Judge is implementing Rule 302 by redacting documents. It appears that any delay in the release of redacted documents is, at least in part, attributable to some of the attorneys who participated in the ancillary proceedings and who were ordered some time ago to prepare redacted copies for the Chief Judge's review. The Chief Judge's adherence to Rule 302 is also demonstrated by her order of February 24, 1998, granting the press's motion to unseal certain papers filed by President Clinton in connection with his motion for an order to show cause.

As to attendance at ancillary hearings, local Rule 302 states, "All hearings on matters affecting a grand jury proceeding shall be closed, except for contempt proceedings in which the alleged contemnor requests a public hearing." Rule 302 could be read as requiring the courtroom to be closed regardless of whether the hearing will reveal matters occurring before the grand jury. We seriously doubt that this reading is correct. Given Rule 6(e)(5)—ancillary proceedings shall "be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury"—local Rule 302 appears to mean only that, as an initial matter, all proceedings relating to the grand jury shall be closed, subject to an order opening the proceedings. On the limited record we have before us, we cannot be certain how the Chief Judge has interpreted the local rule. At any rate, the press has mounted no direct

argument against the constitutionality of Rule 302; as we said before, its briefs do not even mention it. Whether, on the stricter reading, the rule would exceed the district court's authority to implement Rule 6(e)(5) is therefore an issue that has not been properly raised and one we do not decide. *See* FED. R.CRIM. P. 57(a)(1) (providing that district court rules "shall be consistent with" Acts of Congress and rules adopted pursuant to 28 U.S.C. § 2072).

As a matter of judicial administration, initially closing all ancillary proceedings makes good sense. If a hearing is about something "affecting" a grand jury investigation, there will nearly always be a danger of revealing grand jury matters.[8] Consider a challenge to a witness's claim of a testimonial privilege. The prosecutor appears before the Chief Judge seeking an order to compel testimony. The witness's identity, the fact that he was subpoenaed to testify, the fact that he invoked the privilege in response to questions, the nature of the questions asked—all these would be, according to our precedent, *SEC v. Dresser Industries, Inc.,* 628 F.2d at 1382, "matters occurring before the grand jury." To suppose that the First Amendment compels the court to conduct such hearings by placing the witness behind a screen and by emptying the courtroom each time a grand jury matter reaches the tip of an attorney's or the judge's tongue is to suppose the ridiculous. We fully agree with Judge Becker, writing for the court in *United States v. Smith,* 123 F.3d 140, 153 (3d Cir.1997), that

jury proceedings shall be sealed and impounded unless otherwise ordered by the court); E.D. MICH. R. 6.1 ("a motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury, all other papers filed in support of or in opposition to such a motion or application, and all orders entered by the Court in connection therewith, shall be filed under seal"); D. MONT. R. 105–4 ("grand jury matters, praecipes, subpoenas and returns will not be disclosed ... without an order of court"); E.D. PA. R. 6.1(c)(4) ("all motions, affidavits or other papers relative to legal proceedings relating to grand jury investigations shall be automatically impounded, *i.e.,* filed under seal by the Clerk of the Court"); M.D. TENN. R. 6(b)(4) ("[a]ll matters pertaining to the grand jury ... shall be placed and maintained under seal by the Clerk of the Court absent a specific order from a district judge to the contrary");

W.D. WASH. R. 6(h)(2) (clerk "shall accept for filing under seal without the need for further judicial authorization all motions and accompanying papers designated by counsel as related to Grand Jury matters"); E.D. WIS. R. 21.01 ("all subpoenas, motions, pleadings and other documents ... concerning or contesting ongoing grand jury proceedings shall be treated as sealed documents").

**8.** District court hearings on the motions filed by the press in this matter are of course an exception. These motions related to the grand jury but obviously revealed nothing about its workings. For that reason, we ordered the Chief Judge's orders denying the motions to be unsealed. We think it safe to say that ancillary hearings of this sort are not the focus of the press's First Amendment claim.

"courts cannot conduct their business that way," nor should they be compelled to do so.

■ Of course, some ancillary proceedings might be conducted in such a way that there is no danger of grand jury matters being revealed. Rule 6(e)(5) binds the courts of appeals (and the Supreme Court) as well as the district courts. *See* FED. R.CRIM. P. 1 & 54(a). In cases on appeal from orders issued in ancillary proceedings, which we usually caption *"In re Sealed Case,"* we have sometimes taken portions of briefs and other papers under seal, and then held the oral argument in open court after assuring ourselves that no grand jury matter would be discussed. On other occasions, we have closed the courtroom for oral argument. In administering Rule 6(e)(5), appellate courts have a comparative advantage over district courts. We do not hear from witnesses. Oral arguments on appeal are always preceded by written arguments, usually filed well in advance. The briefs refine the legal points of contention and enable us to determine whether discussion of grand jury matters at oral argument will be needed. In the district court, ancillary proceedings generally proceed at a more rapid pace, the proceedings are typically not as structured, issues are not always as highly refined, witnesses may be present, and written presentations may be abbreviated. A proceeding in the district court to quash a subpoena, or to compel testimony, or to immunize a witness would, it seems to us, almost invariably reveal matters occurring before the grand jury, and thus may properly be closed to the public. In ancillary proceedings dealing with other subjects, however, it may be difficult to determine at the outset whether grand jury matters might wind up being discussed. In all events, if the Chief Judge can allow some public access without risking disclosure of grand jury matters—either because the subject of the proceeding removes the danger or because the proceedings may be structured to prevent the risk without disruption or delay (*see United States v. R. Enterprises,* 498 U.S. 292, 298, 111 S.Ct. 722, 726–27, 112 L.Ed.2d 795 (1991))—Rule 6(e)(5) contemplates that this shall be done. But it will be done because the Federal Rules of Criminal Procedure confer this authority on district courts, not because the First Amendment demands it.

■ Recognizing a First Amendment right to force ancillary proceedings to be conducted without referring to grand jury matters would create enormous practical problems in judicial administration, and there is no strong history or tradition in favor of doing so. The Supreme Court ruled in *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), that the First Amendment did not entitle members of the media to attend a pretrial suppression hearing, at least so long as they could receive copies of the transcript at a later date after the danger of prejudice to the defendant had passed. The Court reached the opposite conclusion in *Press–Enterprise Co. v. Superior Court (Press–Enterprise II),* 478 U.S. 1, 12, 13, 106 S.Ct. 2735, 2742–43, 92 L.Ed.2d 1 (1986), holding that a "qualified First Amendment right of access attaches to preliminary hearings in California"—that is, probable cause hearings "sufficiently like a trial to justify" the conclusion that they should be open. One of the main differences between the two cases was that although the "near uniform practice of state and federal courts has been to conduct preliminary hearings in open court," *Press–Enterprise II,* 478 U.S. at 10, 106 S.Ct. at 2741; *see also id.* at 8, 106 S.Ct. at 2740, the Court in *Gannett* could identify no long-standing tradition of public access to pretrial suppression hearings. 443 U.S. at 384–93, 99 S.Ct. at 2907–12. There is likewise no such tradition regarding ancillary proceedings relating to the grand jury. *See, e.g., Levine,* 362 U.S. at 615, 80 S.Ct. at 1042, stating with regard to such a proceeding, "the courtroom had been properly, indeed, necessarily cleared." [9] The press directs us

---

9. In this Circuit, proceedings concerning compliance with grand jury subpoenas and objections to subpoenas on the ground of privilege are sealed in the district court. *See Sealed v. Sealed,* No. 95–446 (D.D.C. filed Dec. 12, 1995), *rev'd and remanded, In re Sealed Case,* 124 F.3d 230 (D.C.Cir.1997) (motion to quash on grounds of attorney-client and work-product privileges), *cert. granted sub nom. Swidler & Berlin v. United States,* —— U.S. ——, 118 S.Ct. 1358, 140 L.Ed.2d 509 (1998); *Sealed v. Sealed,* No. 95–377 (D.D.C. filed Nov. 6, 1995), *rev'd and remanded,*

to a 1980 report by the General Accounting Office—a report concerning the need to improve grand jury secrecy before the adoption of Rules 6(e)(5) and 6(e)(6)—as evidence that there is a "tradition of accessibility" to ancillary hearings. *See* Brief for Appellants at 17–19. The GAO Report, however, did not suggest that there was any widespread or longstanding history of openness. Rather, GAO discovered a divergence of opinion among judges about whether "proceedings ancillary to the grand jury proceedings ... should be open to the public." COMPTROLLER GENERAL, MORE GUIDANCE AND SUPERVISION NEEDED OVER FEDERAL GRAND JURY PROCEEDINGS 5 (1980). "Of the 15 judges we interviewed in 6 districts, 7 routinely hold preindictment proceedings in open court, 4 routinely close them, and 4 decide when to open or close them on a case-by-case basis." *Id.* at 8–9. We therefore agree with *Smith*, 123 F.3d at 149, that neither the press nor any member of the public has a First Amendment right to demand that the Chief Judge conduct open ancillary hearings in a way that would not reveal grand jury matters. *Accord In re Grand Jury Subpoena (John Doe No. 4)*, 103 F.3d 234, 242 (2d Cir.1996); *In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records*, 864 F.2d 1559 (11th Cir.1989).

The press also tells us that, at least with respect to disputes about executive privilege, there is a tradition of open proceedings. *See* Brief for Appellants at 11–14. Many of the instances identified, however, arose in response to congressional inquiries, or trial subpoenas, the most famous of which is *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). It is true that Chief Judge Sirica held an open hearing on President Nixon's very public refusal to comply with a grand jury subpoena duces tecum on the grounds of executive privilege. *See In re Subpoena to Nixon*, 360 F.Supp. 1, 9 (D.D.C.1973). But this example surely proves too much. Chief Judge Sirica's opinion, and we assume the transcript of the hearing itself, contains references to numerous "matters occurring before the grand jury" within Rule 6(e)'s meaning. *See, e.g., id.* at 3, 10, 11. Yet in this case the press concedes that the First Amendment confers no right of access to such matters. Furthermore, Chief Judge Sirica conducted the hearing before adoption of Rule 6(e)(5). As against this example stands the most recent case we heard dealing with an assertion of executive privilege during a grand jury proceeding. In that case, the district court closed the hearing to the public and our opinion revealed no grand jury matter. *See Sealed v. Sealed*, No. 95–192 (D.D.C. filed June 7, 1995), *vacated and remanded, In re Sealed Case*, 121 F.3d 729 (D.C.Cir.1997).

There can be no doubt that assertions of executive privilege are rightly matters of intense public interest. But there have been too few examples of open ancillary hearings dealing with the privilege in the grand jury context to suggest any kind of trend, let alone an "unbroken, uncontradicted history." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980) (Burger, C.J.); *see also id.* at 565–68, 100 S.Ct. at 2821–23. There also can be no doubt of the value of public scrutiny of assertions of executive privilege. But as the Supreme Court emphasized in *Press–Enterprise II*, grand jury proceedings give rise to strong countervailing considerations. "[I]t takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that the

*In re Sealed Case*, 107 F.3d 46 (D.C.Cir.1997) (action to compel production of subpoenaed documents which were withheld on basis of attorney-client privilege and work product immunity). Other courts also routinely close hearings on motions to quash grand jury subpoenas. *See In re Grand Jury Proceedings*, 867 F.2d 539, 540 n. 1 (9th Cir.1988) ("All documents and briefs in this matter have been filed under seal to protect the secrecy of ongoing grand jury proceedings. The true names of appellant Doe and his former attorney Mary Roe are not revealed in this opin-

ion."); *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 53 (2d Cir.1985) ("Appellant is the custodian of records of a corporation whose name, along with the briefs and records in this case, remains under seal to protect the secrecy of the grand jury proceedings."); *In re Grand Jury Empanelled March 8, 1983*, 579 F.Supp. 189, 192 (E.D.Tenn.1984) (ordering that hearings relating to motions to quash grand jury subpoenas be closed and "motions, responses to motions, and briefs which tend to reveal the substance of grand jury subpoenas" be sealed).

'proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" 478 U.S. at 8–9, 106 S.Ct. at 2740 (quoting *Douglas Oil*, 441 U.S. at 218, 99 S.Ct. at 1672). The press in this case is not, in any event, barred from receiving non-protected details about what transpired before the court. The "denial of access," thus, is "not absolute but only temporary." *Gannett*, 443 U.S. at 393, 99 S.Ct. at 2912. Local Rule 302 provides that on the motion of "any person," or *sua sponte*, the court may make publicly available "portions" of "transcripts" of ancillary proceedings "upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury." During oral argument, counsel for the White House informed us that the process of redacting transcripts of proceedings involving executive privilege was underway, pursuant to the Chief Judge's directive.

A problem remains. If the press is given no access to the fact that some sort of ancillary proceeding has taken place, or will take place, it may be unable to invoke Rule 302. In *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C.Cir.1991), we held that there was a First Amendment right of access to plea agreements because these "have traditionally been open to the public and public access to them enhances both the basic fairness of the criminal proceeding and the appearance of fairness." *Id.* at 288. In light of this, we also held that trial courts must follow specific procedural prerequisites before granting a motion to seal. Included among these were an opportunity to be heard, specific findings on the record, and entry on the public docket. *Id.* at 289. Here, although we have found no such right of access under the Constitution, and hence no "procedural component" of the First Amendment violated by the Chief Judge's refusal to enter items under seal on the public docket, we have also recognized that local Rule 302 provides a limited means for disclosing non-secret matters. The rule requires that motions or applications filed in connection with matters occurring before a grand jury "shall be assigned a Miscellaneous case number." The press tells us that "all papers filed with the Clerk's office that have any relation at all to grand jury proceedings are filed under seal

and are not included in the public docket," Brief for Appellants at 39. We can understand why a descriptive caption on a case might reveal grand jury matters, but we cannot understand why a designation such as *"In re Grand Jury Proceedings,"* followed by a miscellaneous case number would have that consequence. The Chief Judge, in her memorandum opinion, did not explain why, in light of Rule 302, there has been such a blanket sealing of the docket. As to this subject, we will therefore remand the case for reconsideration.

■■■■■ The press has also advanced what it calls a common law right of access to ancillary proceedings, a right resting on the Supreme Court's recognition of a common law right of access to "inspect and copy judicial records." *Nixon v. Warner Communications*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); *see also Washington Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897, 902 (D.C.Cir. 1996). The common law right, however, is not absolute. *See United States v. Hubbard*, 650 F.2d 293, 315 (D.C.Cir.1980) (listing "time-honored exceptions") (quoting *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312). There is, for instance, no right of access to "documents which have traditionally been kept secret for important policy reasons." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir.1989); *see also United States v. Corbitt*, 879 F.2d 224, 228 n. 2 (7th Cir.1989); *In re Nat'l Broad. Co.*, 635 F.2d 945, 952 n. 4 (2d Cir.1980). Although some have identified a common law tradition of public access to criminal trials, this never extended to preindictment, pretrial proceedings involving a grand jury. *Gannett Co.*, 443 U.S. 368, 99 S.Ct. 2898, indicates as much. In any event, even if there were once a common law right of access to materials of the sort at issue here, the common law has been supplanted by Rule 6(e)(5) and Rule 6(e)(6) of the Federal Rules of Criminal Procedure. These Rules, not the common law, now govern. *See In re Grand Jury Subpoena (John Doe No. 4)*, 103 F.3d at 237.

■■■■■ Much of what we have already written relates to the press's motions regarding

the two specific ancillary proceedings. In the first of these, the press sought access to proceedings, papers, orders, and rulings "concerning assertions by Francis D. Carter of objections to the grand jury subpoena issued by the Independent Counsel." *See* Motion for Access to Proceedings Concerning Objections (filed Mar. 5, 1998). The Chief Judge, relying on FED. R.CRIM. P. 6(e)(5) and (6), found that "access to these matters poses a significant risk of disclosing information which has occurred or which may occur before the grand jury." We have held that "matters occurring before the grand jury" include "the identities of witnesses." *Fund for Constitutional Gov't*, 656 F.2d at 869; *see also In re Grand Jury Proceedings*, 914 F.2d 1372, 1374 (9th Cir.1990) (noting that the government is not free to "publish lists of prospective or former grand jury witnesses"); *In re Grand Jury Investigation*, 610 F.2d 202, 216–17 (5th Cir.1980) ("We construe the secrecy provisions of Rule 6(e) to apply not only to disclosures of events which have already occurred before the grand jury, such as a witness's testimony, but also to disclosures of matters which will occur, such as statements which reveal the identity of persons who will be called to testify."). The Chief Judge may have believed that to have granted even the press's motion for redacted versions of transcripts or other papers would have been to confirm the identity of a person the grand jury had subpoenaed. *Cf. Andresen v. Maryland*, 427 U.S. 463, 474, 96 S.Ct. 2737, 2745, 49 L.Ed.2d 627 (1976) (noting that "the very act of production may constitute a compulsory authentication of incriminating information").[10] If the blanket denial of the motion rested on that ground, we do not believe it can be sustained. By the time of the Chief Judge's order it was no longer a secret that the grand jury had subpoenaed Carter. Carter's attorney virtually proclaimed from the rooftops that his client had been subpoenaed to testify before the grand jury. *See, e.g., Lewinsky Ex–Lawyer Fights to Keep His Notes from Starr*, BOSTON GLOBE, Mar. 5, 1998, at A13; Toni Locy, *Ex–Intern's First Attorney Seeks to Have Subpoena Quashed*, WASH. POST, Mar. 5, 1998, at A14; *CBS Morning News* (CBS television broadcast, Mar. 5, 1998); *All Things Considered* (NPR radio broadcast, Mar. 4, 1998); David Willman & Robin Wright, *Ex–Lewinsky Lawyer Fights Starr Subpoena*, L.A. TIMES, Mar. 3, 1998, at A1; John Mintz, *Lewinsky's First Lawyer is Defended*, WASH. POST, Feb. 5, 1998, at A1. It is true that "Rule 6(e) does not create a type of secrecy which is waived once public disclosure occurs." *In re North*, 16 F.3d 1234, 1245 (D.C.Cir.1994) (quoting *Barry v. United States*, 740 F.Supp. 888, 891 (D.D.C. 1990)). But it is also true that "when information is sufficiently widely known ... it has lost its character as Rule 6(e) material." *Id.* Carter's identity as a person subpoenaed to appear before the grand jury has become such information, not because of press reports relying on unnamed sources, but because Carter's attorney decided to reveal this fact to the public. *Cf. United States v. R. Enterprises*, 498 U.S. at 294–96, 111 S.Ct. at 724–25.

Still, the Chief Judge may have refused to provide redacted versions of the material requested by the press (as local Rule 302 contemplates) for reasons other than protecting the secrecy of Carter's identity. The particular items, documents, or testimony the grand jury seeks from Carter are not matters of public record, nor are Carter's specific grounds for resisting. Such "matters occurring before the grand jury" may have been woven tightly into the ancillary proceeding involving Carter, so tightly that the Chief Judge believed that none of the material could be released. In a similar situation, the special division of this court recognized that sometimes "redaction is simply not possible." *In re North*, 16 F.3d at 1242. While this may have been the Chief Judge's reasoning, we cannot tell from the explanation given in her order. Our only recourse, therefore, is to vacate the order insofar as it denied the motion for redacted versions of the transcript and other papers and remand the case for reconsideration.

---

**10.** The Chief Judge's order denying the motion mentioned Mr. Carter by name. We do not view this as confirming his status as someone called by the grand jury. The Chief Judge merely paraphrased the press's own submission.

■ The final issue deals with the press's motion for public access to hearings and transcripts relating to President Clinton's motion to show cause. In response to an earlier press motion requesting unsealing, the Chief Judge conducted a Rule 302 analysis, stating: "After having reviewed the President's motion for order to show cause and the accompanying materials, the Court finds that continued sealing of that motion is not necessary to prevent disclosure of matters occurring before the grand jury." In ruling on the motion for access to hearings and transcripts, however, the Chief Judge found that "access to the transcripts poses a significant risk of disclosing information which has occurred or which may occur before the grand jury." The judge did not mention whether redacted transcripts might be made public, although Rule 302 states that the court may release "portions" of papers, orders, and transcripts of hearings. D.D.C.R. 302. The Chief Judge's silence on the subject stems from the press's failure to make it clear that it was requesting only redacted versions of the transcripts. The press proposed an order, but the order did not mention the possibility of redaction and it seems clear to us that the Chief Judge did not believe a motion for a redacted copy had been made. Thus, as matters now stand, the press has requested only an entire unredacted transcript of the proceedings. We have no reason to doubt the Chief Judge's judgment that releasing the entire transcript would threaten to reveal grand jury matters. The show cause motion itself concerns claims that the Independent Counsel had been leaking grand jury material to the press. To decide such a motion one would naturally need to know whether any of the published reports actually mentioned matters that had occurred before the grand jury. If, however, the press clearly requests redacted versions of these transcripts in the future, we are confident that the Chief Judge would act on the motion consistent with the limits of Rule 6(e)(6) and local Rule 302.

\*      \*      \*

We remand for reconsideration the Chief Judge's order insofar as it denies the motion for entry of items on the public docket and vacate and remand the Chief Judge's order denying the motion for redacted papers, orders, and transcripts in the Carter proceeding. In all other respects, the orders are affirmed.

*So ordered.*