# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 21, 2020        Decided June 26, 2020

No. 19-7027

LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, ET AL.,
APPELLEES

v.

BRIAN D. NEWBY, IN HIS CAPACITY AS THE EXECUTIVE
DIRECTOR OF THE UNITED STATES ELECTION ASSISTANCE
COMMISSION AND UNITED STATES ELECTION ASSISTANCE
COMMISSION,
APPELLEES

EAGLE FORUM EDUCATION & LEGAL DEFENSE FUND,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00236)

———

*Lawrence J. Joseph* argued the cause and filed the briefs
for appellant.

*Caroline Lopez*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With her on the brief were *Mark
B. Stern* and *Daniel Tenny*, Attorneys.

Before: TATEL, GARLAND, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Pursuant to Federal Rule of Civil Procedure 24(b) and the common-law right of access, third parties may intervene in cases for the "limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *EEOC v. National Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Such third parties, however, may seek disclosure only of "public records," which, in the context of court proceedings, are called "judicial records." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). Here, a third-party organization moved to intervene to seek disclosure of sealed materials that the federal government claims are privileged. The district court denied the motion because, in its view, the organization's interests were adequately represented by preexisting parties and none of the materials sought qualified as judicial records. For the reasons set forth below, we reverse.

## I.

Despite the caption—*League of Women Voters of the United States v. Newby*—this appeal is a dispute between Eagle Forum Education & Legal Defense Fund, the aspiring intervenor, and the federal government, which opposes its intervention. A full description of the background appears in an earlier opinion in this case, *League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016). Set forth below are the few details needed to understand the issue before us.

Federal law directs every state to "accept and use the mail voter registration application form prescribed by the [Election

Assistance Commission],” a four-member independent commission tasked with monitoring and disseminating information regarding the administration of Federal elections. 52 U.S.C. § 20505(a)(1); *see id.* §§ 20508(a)(2), 20921, 20923(a)(1) (establishing the Election Assistance Commission and assigning to it responsibility over the mail-in form). The mail-in registration form, or “Federal Form,” must, among other things, “specif[y] each eligibility requirement (including citizenship)” and “require[] the signature of the applicant, under penalty of perjury,” “attest[ing] that the applicant meets each such requirement.” *Id.* § 20508(b)(2)(A)–(C). The Commission includes additional registration details for each state as an attachment to the Form, including where to mail the application and “information regarding the state’s specific voter eligibility and registration requirements.” 11 C.F.R. § 9428.3(b). Although states may, with the Commission’s approval, supplement the registration requirements listed on the Federal Form, they “may require only such identifying information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process.” 52 U.S.C. § 20508(b)(1).

In the last decade, several states, including Alabama, Arizona, Georgia, and Kansas, have “enacted laws requiring that anybody who wishes to register to vote must provide documentary proof of United States citizenship.” *League of Women Voters*, 838 F.3d at 5. Two of those states, Arizona and Kansas, petitioned the Commission to “add language requiring documentary proof of citizenship to each state’s instructions on the . . . []‘Federal Form’[].” *Kobach v. U.S. Election Assistance Commission*, 772 F.3d 1183, 1187–88 (10th Cir. 2014). The Commission “concluded that the additional language was unnecessary and denied their requests.” *Id.* at 1188. But following the appointment of a new Commission Executive

Director, Kansas resubmitted its request to have its instructions on the Federal Form amended to include the requirement of documentary proof-of-citizenship. The new Executive Director, Brian Newby, approved Kansas's request, along with similar ones by Georgia and Alabama.

Several voting-rights organizations, including the League of Women Voters, along with a number of Kansas residents, brought the underlying lawsuit here, arguing, among other things, that Newby acted outside the scope of his authority by unilaterally changing the Commission's policy on documentary proof-of-citizenship requirements. They also argued that even if the Executive Director had such authority, the decision violated the statute by failing to consider whether such requirements were "necessary." 52 U.S.C. § 20508(b)(1). When the United States Department of Justice refused to defend Newby's actions, the district court permitted Kansas and the Public Interest Legal Foundation, an organization focused on election-law issues, to intervene to defend Newby's approval of the States' requests.

Plaintiffs then filed a motion for a preliminary injunction, which the district court denied on the ground that they failed to demonstrate irreparable harm. *See League of Women Voters of the United States v. Newby*, 195 F. Supp. 3d 80, 94–96 (D.D.C. 2016). Our court reversed, finding that plaintiffs had established irreparable harm and were likely to succeed on the merits of at least one claim—that "Newby never made the necessity finding required by [the statute]." *League of Women Voters*, 838 F.3d at 12.

Setting the stage for the appeal now before us, Kansas, in the course of litigating the preliminary-injunction motion in district court, moved to depose Commissioner Christy McCormick regarding the Commission's earlier decision to

deny the States' requests to amend the Federal Form. The federal government opposed the motion, arguing, among other things, that much of McCormick's testimony would be privileged. Although the district court permitted each side to depose McCormick, it "ordered that no party or individual may publicly disclose[] on this court's docket . . . any documents or information disclosed by [McCormick] . . . for which a party asserts a claim of privilege, until after the court has ruled on any privilege dispute." Order, *League of Women Voters*, No. 16-cv-236, (D.D.C. Mar. 1, 2016), Dkt. No. 42. The McCormick deposition proceeded, and Kansas and the Public Interest Legal Foundation inserted information derived from the deposition into several briefs and exhibits. Because the district court has yet to rule on the government's assertions of privilege, the unredacted versions of those documents remain under seal.

In March 2017, Eagle Forum, a nonprofit organization that advocates for the use of documentary proof-of-citizenship in voter registration, moved under Federal Rule of Civil Procedure 24(b) to permissively intervene for the limited purpose of gaining access to the sealed briefs and exhibits containing materials related to McCormick's testimony. Two years later, the district court denied Eagle Forum's motion in a Minute Order. "[E]xercis[ing]" its "discretion to deny . . . request[s] for permissive intervention," the court explained that "existing parties [could] more than adequately represent [Eagle Forum's] interests," and that Eagle Forum operated from the "incorrect premise that [the] documents" it sought "are currently judicial records." Minute Order, *League of Women Voters*, No. 16-cv-236 (D.D.C. Mar. 28, 2019) (internal quotation marks omitted).

Eagle Forum filed a timely notice of appeal. Plaintiffs and intervenors in the underlying case have declined to participate.

**II.**

Although both parties assure us of our appellate jurisdiction to review the district court's order, "we have an independent obligation to be certain." *Midwest Independent Transmission System Operator, Inc. v. FERC*, 388 F.3d 903, 908 (D.C. Cir. 2004). This court has never expressly addressed its jurisdiction to review a district court order denying a motion to permissively intervene for the limited purpose of unsealing judicial records. *Cf. National Children's Center*, 146 F.3d at 1046 (reviewing the denial of such a motion to intervene without discussing the court's appellate jurisdiction). We are certain, however, that the collateral-order doctrine enables us to review such actions. As relevant here, that doctrine permits review of "decisions that, although they do not end the litigation, . . . are conclusive, . . . [and] resolve important questions separate from the merits." *Swint v. Chambers County Commission*, 514 U.S. 35, 42 (1995).

Our court has applied the collateral-order doctrine in related contexts. For example, in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), we held that a district court order to unseal was appealable because it was "'separable from, and collateral to' the rights of the parties to the . . . proceedings" and "as a practical matter, 'finally determine[d]' the claim" given that granting "public access to the documents at issue [would] to some extent irreparably damage the interests asserted." *Id.* at 314 (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949)). And in *In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325 (D.C. Cir. 1985), we held that an order denying disclosure of documents also qualified as an appealable collateral order. *Id.* at 1330.

The reasoning in those cases applies equally to the order denying intervention here. As there, the district court order here is "separable from, and collateral to" the rights at issue in the

underlying case. That is, the underlying case does not concern public-access rights, and "the party challenging the order was not a party to the underlying . . . proceeding." *Id.* In fact, the parties continued to litigate during the pendency of the motion to intervene, after the order denying that motion was entered, and during the course of this appeal. Moreover, the district court's order "finally determine[d]" the issue of whether Eagle Forum could participate in the case. *Hubbard*, 650 F.2d at 314 (internal quotation marks omitted). The district court's order therefore qualifies as an appealable collateral order.

## III.

"[E]very circuit court that has considered the question"—including this one—"has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." *National Children's Center*, 146 F.3d at 1045. Once in the lawsuit, the intervenor may assert the common-law right of public access "to records of [the] judicial proceeding." *Hubbard*, 650 F.2d at 314. But "not all documents filed with courts are judicial records," and "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *SEC v. American International Group*, 712 F.3d 1, 3 (D.C. Cir. 2013) (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)). We review a district court's determination of whether materials qualify as judicial records de novo. *El-Sayegh*, 131 F.3d at 160.

Here, the government does not defend the district court's first reason for denying the motion to intervene—that Eagle Forum's interests are adequately represented by existing parties. Accordingly, this appeal turns on the district court's second reason for denying the motion—that the materials in question are not judicial records. *See* Government Br. 3 (stating "the Issue" as "Whether the district court correctly denied

Eagle Forum's motion . . . on the ground that the sealed portions of the filings have not become judicial records."); Oral Arg. Rec. 26:54–58 ("There's just one issue . . . . [The two issues] collapse in this particular posture."). Resolution of that issue, moreover, turns on just one case: our court's decision in *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017).

In *MetLife*, the district court denied an intervenor's request to unseal redacted portions of briefs and appendices. *See id.* at 664. Defending the district court's decision on appeal, the original parties argued that the intervenor had no common-law right to the redacted materials. According to them, because the district court never "quote[d] or cite[d] any of those sealed (redacted) parts," the documents had "not play[ed] a sufficient role in the adjudicatory process to qualify as judicial records." *Id.* at 666.

Rejecting that argument, we explained that "[a] brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it." *Id.* at 667. The briefs in question, we pointed out, had been "filed before the district court's decision and were intended to influence it," and "we ha[d] no doubt that," in coming to its decision, "the [district] court read the briefs, including the parts it did not cite or quote." *Id.* at 668. After all, "[w]ithout access to the sealed materials, it is impossible to know which parts of those materials persuaded the [district] court and which failed to do so (and why)." *Id. MetLife* thus stands for the proposition that every part of every brief filed to influence a judicial decision qualifies as a "judicial record." Although there may be an exception for material inserted into a court filing in bad faith, that is plainly not the case here.

*MetLife* controls here. The briefs filed in opposition to

plaintiffs' preliminary-injunction motion contain materials from the McCormick deposition, and the district court, "[u]pon consideration of the parties' pleadings and oral arguments," denied the motion. *League of Women Voters*, 195 F. Supp. 3d at 83. Then, when plaintiffs appealed that decision to this court, Kansas filed a brief that contained materials from the McCormick deposition, and that too led to a judicial decision—this court's reversal of the district court's denial of plaintiffs' preliminary-injunction motion, *see League of Women Voters*, 838 F.3d at 4. And as in *MetLife*, we have "no doubt" that both the district court and this court "read the briefs, including the parts [they] did not cite or quote." 865 F.3d at 668. Under *MetLife*, then, the district court was mistaken in saying that *no* "documents subject to [the government's] privilege claims are currently 'judicial records.'" Minute Order, *supra*.

The government makes much of the fact that the sealed materials pertain to just one legal issue—whether Newby acted outside the scope of the Executive Director's authority by unilaterally reversing the Commission's policy—and that in the preliminary-injunction proceedings, neither the district court nor this court reached that issue. But that is essentially the same argument that was made and rejected in *MetLife*—that the judicial "opinion . . . did not quote or cite any of th[e] sealed (redacted) parts" of the briefs. 865 F.3d at 666. As we explained, a "brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it." *Id.* at 667. That is no less true where, as here, a court disposes of a motion or appeal in such a way as to avoid reaching one or more of the presented issues. The fact that a court ultimately determines it need not reach a briefed issue hardly means the issue played no role in the "decisionmaking process." *Id.*

Under *MetLife*, then, Eagle Forum may intervene for the

limited purpose of seeking to unseal references to the McCormick deposition. In so ruling, we emphasize that this does not mean that those materials must be unsealed. Under our decision in *Hubbard*, the district court will still need to determine whether countervailing interests, including the government's privilege claims, justify continued sealing. *See* 650 F.2d at 323–24 (discussing privacy interests—e.g., "a privilege against evidentiary use"—"to be weighed against" public access).

## IV.

For the foregoing reasons, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

*So ordered.*