# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 15, 2020          Decided January 8, 2021

No. 19-5278

CABLE NEWS NETWORK, INC.,
APPELLEE

v.

FEDERAL BUREAU OF INVESTIGATION,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01167)

———

*Thomas Pulham*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs was *Sharon Swingle*, Attorney. *Joseph H. Hunt*, Assistant Attorney General, entered an appearance.

*Charles D. Tobin* argued the cause for appellee. With him on the brief were *Matthew E. Kelley* and *Maxwell S. Mishkin*.

*Bruce D. Brown* and *Katie Townsend* were on the brief for *amicus curiae* Reporters Committee for Freedom of the Press, et al. in support of appellee. *Caitlin Vogus* and *Daniel J. Jeon* entered appearances.

1

Before: GARLAND*, MILLETT, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: CNN sued the FBI under the Freedom of Information Act for access to memos that former FBI Director James Comey wrote. The FBI responded by filing a redacted declaration by Deputy Assistant Director David Archey explaining why it redacted the Comey Memos. Later, after the FBI disclosed most of the Comey Memos, the district court ordered the FBI to disclose the unredacted Archey Declaration under the common-law right to access judicial records. For forty years, this Court has weighed that right's competing interests using a six-factor test first articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).

Because we agree with the FBI that the district court misapplied *Hubbard*, we vacate and remand for the district court to reapply *Hubbard*'s factors.

I.

In May 2017, President Donald Trump fired FBI Director James Comey. Soon after, the *New York Times* reported that Comey had taken notes following his meetings with President Trump.[1] Other reporters rushed to get their hands on those notes, soon dubbed "the Comey Memos." When the FBI refused to disclose them, CNN and other news

---

\* Judge Garland was a member of the panel at the time this case was argued but did not participate in the final disposition of the case.
[1] *See* Michael S. Schmidt, *Comey Memo Says Trump Asked Him to End Flynn Investigation*, NEW YORK TIMES, May 16, 2017.

outlets sued under the Freedom of Information Act.[2]

Under FOIA, an agency may withhold documents if an exemption applies. 5 U.S.C. § 552(b). Initially, the FBI relied on a FOIA exemption based on Special Counsel Robert Mueller's investigation of Russia's interference in the 2016 presidential election. Because Comey was a witness in that ongoing probe, the FBI said his notes were exempt from disclosure. To explain its position, and over CNN's objection, the FBI filed an *ex parte*, *in camera* declaration by Deputy Assistant Director David Archey, who supervised all FBI employees working on the Russian interference investigation.

For a while, the district court agreed with the FBI. It ruled that the FBI could continue withholding the Comey Memos at least until Mueller's investigation ended. *CNN v. FBI*, 293 F. Supp. 3d 59, 65 (D.D.C. 2018). The district court didn't address the other FOIA exemptions the FBI asserted.

After CNN appealed, but before its appeal was decided, the Department of Justice gave redacted Comey Memos to members of Congress, who sent them to journalists, who published them. This Court then remanded the case for reconsideration "in light of subsequent statements by government officials that release of the memoranda would no longer adversely impact any ongoing investigation." *CNN v. FBI*, No. 18-5041, 2018 WL 3868760, at *1 (D.C. Cir. Aug. 8, 2018) (per curiam).

When the parties returned to district court, they again moved for summary judgment. Recall that in the first round of summary judgment briefing over the Comey Memos, the

---

[2] The others were Gannett Satellite Information Network LLC; Brad Heath; James Madison Project; Lachlan Markay; Garrett Graff; Judicial Watch, Inc.; Freedom Watch, Inc.; and The Daily Caller News Foundation. The district court consolidated the cases. CNN is the only remaining plaintiff.

FBI had filed the Archey Declaration *ex parte* and *in camera,* over CNN's objection.  This time, CNN asked for the entire Archey Declaration.  Again, the FBI balked, but it did file a redacted public version of the Archey Declaration.

Outside events again overtook the litigation.  In April 2019, Mueller completed his investigation and released the long-awaited Mueller Report.  The district court then granted summary judgment in part and denied it in part to both sides.  Relevant here, it found that the FBI properly redacted the Comey Memos to protect intelligence sources and methods, but CNN had a common-law right to access the forty-or-so words still redacted from the Archey Declaration.  *CNN v. FBI*, 384 F. Supp. 3d 19, 31-32, 44 (D.D.C. 2019); Tr. Oral Arg. 16:17 (Sept. 15, 2020).

Now, the FBI appeals the district court's unsealing order.[3]  No one appeals the district court's decision on the Comey Memos.  Thus, the only question before us is whether the district court erred in ordering the FBI to disclose the entire Archey Declaration.[4]

---

[3] We assume without deciding that FOIA and the National Security Act do not preempt the common law when a document is filed *ex parte* and *in camera* in FOIA litigation to persuade the Court not to release FOIA materials.

[4] CNN asks us to consider the First Amendment right of access as an alternative ground for affirming the unsealing order.  We decline to reach that issue.  *See In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1126-27 (D.C. Cir. 2020) ("In light of the result we reach with respect to the common law, we avoid unnecessarily passing on a constitutional question of first impression in this circuit.").

4

II.

A.

We review de novo a district court's determination that a document is a judicial record. *League of Women Voters of the United States v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020). Although we review an unsealing order for abuse of discretion*,* we review de novo whether the district court "applied the proper legal standard in exercising its discretion." *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1131 (D.C. Cir. 2020) (cleaned up).

B.

The FBI argues that the Archey Declaration isn't a judicial record. Even assuming the FBI didn't forfeit that argument (as CNN contends), we disagree.

"[W]hether something is a judicial record depends on the role it plays in the adjudicatory process." *SEC v. American International Group*, 712 F.3d 1, 3 (D.C. Cir. 2013) (cleaned up). If the goal in filing a document is to influence a judge's decisionmaking, the document is a judicial record. This Court has even said that "every part of every brief filed to influence a judicial decision qualifies as a judicial record." *League of Women Voters*, 963 F.3d at 136 (cleaned up).

Here, the purpose *and* the effect of the Archey Declaration was "to influence a judicial decision." *Id.* The whole point of filing the Archey Declaration was to help the FBI demonstrate to the court the national security interests at stake in the case. And it worked. The district court acknowledged having read the Archey Declaration when it granted the FBI partial summary judgment the first time. *CNN*, 293 F. Supp. 3d at 67. And the district court did so

5

again in its second summary judgment decision. *See CNN*, 384 F. Supp. 3d at 42 ("Although the Court sees little public value in the specific information that remains redacted, there is enormous public interest in the Comey Memos and documents related to their disclosure.").

In sum, we agree with the district court that the Archey Declaration is a judicial record.

C.

Because the Archey Declaration is a judicial record, we apply a "strong presumption" in favor of disclosing it. *In re Leopold*, 964 F.3d at 1127 (quoting *Hubbard*, 650 F.2d at 317). Accessing judicial records is "fundamental" to "the rule of law" and "important to maintaining the integrity and legitimacy of an independent Judicial Branch." 964 F.3d at 1127 (quoting *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)) (cleaned up).

That said, the right "is not absolute." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978); *MetLife*, 865 F.3d at 663; *American International Group*, 712 F.3d at 3; *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998); *In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325, 1333 (D.C. Cir. 1985) (Scalia, J.); *In re National Broadcasting Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981); *Hubbard*, 650 F.2d at 316 (quoting *Nixon*, 435 U.S. at 598). Rather, as we have repeatedly recognized, competing interests may outweigh the strong presumption favoring disclosure. *In re Leopold*, 964 F.3d at 1127; *MetLife*, 865 F.3d at 665-66; *see American International Group*, 712 F.3d at 3.

We weigh these competing interests by applying the *Hubbard* factors, which are:

(1) [T]he need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*In re Leopold*, 964 F.3d at 1131 (quoting *MetLife*, 865 F.3d at 665); *see also Hubbard*, 650 F.2d at 317-21. While we acknowledge that this Circuit has not previously given the district courts sufficient guidance regarding the meaning of those factors, we part ways with how the district court's thoughtful opinion explained and applied them in this case.

1.

We begin with the first and second *Hubbard* factors: (1) the need for public access to the information redacted from the Archey Declaration, and (2) the extent of previous public access to that information. *In re Leopold*, 964 F.3d at 1131.

The district court said both factors favored CNN. For the first factor, it said, "Although the Court sees little public value in the specific information that remains redacted, there is enormous public interest in the Comey Memos and documents related to their disclosure." *CNN*, 384 F. Supp. 3d at 42. For the second factor, although the district court presumed that the redacted information "is somehow distinct from what is in the public record[,]" it emphasized that most of the document had already been released, and then faulted the FBI for "offer[ing] no explanation or argument here." *Id.* at 42-43.

We respectfully disagree with how the district court

7

applied these factors. To be sure, there is — or at least was — enormous public interest in the Comey Memos. That's why CNN filed this lawsuit in the first place. But there is "little public value in the specific information that remains redacted" in the Archey Declaration. *Id.* at 42.

A district court weighing the first factor should consider the public's need to access the information that remains sealed, not the public's need for other information sought in the overall lawsuit. So, here, the proper inquiry is whether the public needs to access the remaining information redacted from the Archey Declaration, not whether the public needs to access the Comey Memos as a whole or even the Archey Declaration as a whole.

Our discussion of the second factor mirrors the first. A district court weighing the second factor should consider the public's previous access to the sealed information, not its previous access to the information available in the overall lawsuit. The FBI says that the sealed information hasn't been previously disclosed, and there's no indication that it has. *See* Tr. Oral Arg. 16:10-11 ("But the public has never, nor [has] CNN as a FOIA litigant[,] had access to this specific information."). Here, the appropriate question is whether the public has previously accessed the remaining information redacted from the Archey Declaration, not whether the government has previously disclosed other information from that same document.

2.

Next up are the third, fourth, and fifth *Hubbard* factors: "(3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; [and] (5) the possibility of prejudice to those opposing disclosure[.]" *In re Leopold*, 964 F.3d at 1131 (quoting *MetLife*, 865 F.3d at 665).

8

For the third factor, the district court said, "Given that [the FBI] is an agency tasked with national security, the Court takes this objection seriously[,]" though its objection "does not have the same strength as a third-party objection." *CNN*, 384 F. Supp. 3d at 43 (cleaned up). It called the fourth and fifth factors "a bit of a mixed bag." *Id.*

Again, we part ways with how the district court applied these factors. In the national security context, the FBI is no ordinary agency. The National Security Act requires the FBI to keep intelligence sources and methods confidential. 50 U.S.C. § 3024(i).

Thus, although no third party objected to disclosure here — which cut in favor of disclosure in *Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) — the third parties with the most acute interest in the Archey Declaration's redactions are the intelligence sources whose lives may depend on those redactions. Those intelligence sources would out themselves by objecting to CNN's motion, risking the very harm they seek to avoid. To guard their anonymity and to incentivize future sources to cooperate, the FBI has "very broad authority to protect all sources of intelligence information from disclosure." *Sims*, 471 U.S. at 168-69.

Along those same lines, a district court weighing the fourth *Hubbard* factor should consider whether secrecy plays an outsized role in the specific context. In this context, the National Security Act reflects that Congress is "well aware of the importance of secrecy in the intelligence field." *Id.* at 172. That secrecy's importance is hard to overstate. *See id.* at 172 n.16 ("Secrecy is inherently a key to successful intelligence operations."); *see also Hubbard*, 650 F.2d at 315-16 (noting that courts deny public access "to guard against risks to national security"); *cf.* "Loose Lips Sink Ships" (circa 1941-1945).

9

Likewise, a district court weighing the fifth *Hubbard* factor should consider the dire consequences that may occur if an agency discloses its intelligence sources and methods: "Even a small chance that some court will order disclosure of a source's identity could well impair intelligence gathering and cause sources to close up like a clam." 471 U.S. at 175 (cleaned up); *see also* Tr. Oral Arg. 20:1-3 (sources "may be retaliated against if they're uncovered").

3.

Last, we arrive at the sixth *Hubbard* factor: "the purposes for which the [document was] introduced during the judicial proceedings." *In re Leopold*, 964 F.3d at 1131.

Although the *Hubbard* court called this factor the most important element, it did so only in the context of that case. *See* 650 F.2d at 321 ("The single most important element in our conclusion that the proper balance has not been struck *in this case* is the fact that the documents at issue were introduced by the defendants for the sole purpose of demonstrating the unlawfulness of the search and seizure.") (emphasis added). In *Hubbard*, it was "most important" that the sealed documents "were not specifically referred to or examined upon during the course of" the original criminal proceedings. *Id.* at 316, 321. Rather, their "only relevance to the proceedings derived from the defendants' contention that many of them were *not* relevant to the proceedings[.]" *Id.* at 316 (emphasis added).

In other words, when the sixth factor highlights the fact that a sealed document didn't affect a judicial decision, it can be the "most important" element cutting *against* disclosure — by making a multi-factored analysis more straightforward than usual. And the reverse can also be true: When a sealed document is considered as part of judicial decisionmaking, the sixth factor will oftentimes carry great weight. But here, given especially the national security context of the sealed

information, the sixth factor doesn't outweigh other factors with strong claims to the label of "most important" in this case.

In this case, the role of the information in the court's decisionmaking seems to cut both ways. On the one hand, the Archey Declaration was submitted to influence a judicial decision, and the judge relied on that declaration in denying access under FOIA. On the other hand, the fact that it was an *in camera* filing of the type that can be so vital to the proper resolution of FOIA litigation — in which the government necessarily had to disclose information to the court for the very purpose of keeping it secret — cuts against disclosure.

\*       \*       \*

We emphasize that our ruling does not mean that the Archey Declaration should remain redacted. *See League of Women Voters*, 963 F.3d at 136. Rather, we remand for the district court to reapply the *Hubbard* factors "in light of the relevant facts and circumstances of [this] particular case." *Nixon*, 435 U.S. at 599.

We therefore vacate and remand to the district court for proceedings consistent with this opinion.

11