# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 10, 2022      Decided January 17, 2023

No. 21-5223

PERIOPERATIVE SERVICES AND LOGISTICS, LLC,
APPELLANT

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-00095)

*Edward J. Tolchin* argued the cause and filed the briefs for appellant.

*Douglas C. Dreier*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *R. Craig Lawrence*, *Jane M. Lyons*, and *Michael A. Tilghman II*, Assistant U.S. Attorneys.

Before: KATSAS and PAN, *Circuit Judges*, and TATEL, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* TATEL.

TATEL, *Senior Circuit Judge*: This Freedom of Information Act case presents a recurring problem: what is a district court to do when the government claims that a withheld record is exempt from disclosure but the basis for that exemption cannot be gleaned from public affidavits or the withheld record itself? Our court has held that in such circumstances the government may file an ex parte declaration, which the court can read but the FOIA requester cannot, to explain the basis for the exemption. In this case, the district court accepted an ex parte declaration and concluded that the requested record was exempt. For the reasons set forth below, we affirm.

## I.

Perioperative Services and Logistics, LLC, sells medical devices to the Department of Veterans Affairs (VA). After someone emailed the VA accusing Perioperative of selling counterfeit implants, the VA's National Center for Patient Safety posted an internal recall, requiring agency facilities to sequester Perioperative products. Forty days later, after an investigation yielded no support for the accusation, the VA lifted the recall.

Seeking to unmask the complainant, Perioperative filed a FOIA request for the complaint. The VA denied the request, relying on Exemption 6, which shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Perioperative filed suit in district court, and the VA moved for summary judgment. In support, it filed an ex parte declaration by VA employee Brian P. Tierney, who explained why the VA believes that producing the document would invade the complainant's privacy. But, Tierney went on, the VA faced a catch-22: publicly filing the Tierney declaration would itself reveal information that would unmask the

complainant. The district court agreed, reviewed the Tierney declaration in camera, and granted summary judgment to the VA. *Perioperative Services & Logistics, LLC v. Department of Veterans Affairs*, No. 20-cv-00095 (ABJ), 2021 WL 4476769, at *1 (D.D.C. Sept. 30, 2021).

On appeal, Perioperative offers a dozen arguments that boil down to just two: that the district court improperly relied on the Tierney declaration and that the VA failed to carry its burden to demonstrate that the complaint is exempt from disclosure under Exemption 6.

## II.

In accepting the Tierney declaration, the district court relied on our court's decision in *Arieff v. Department of the Navy*, 712 F.2d 1462 (D.C. Cir. 1983), where we held that "the receipt of in camera affidavits is . . . , when necessary, part of a trial judge's procedural arsenal." *Id.* at 1469 (internal quotation marks and citation omitted). In *Arieff*, a journalist sought to uncover lists of prescription drugs supplied to Congress's Office of Attending Physician. *Id.* at 1464–65. The government invoked Exemption 6, arguing that sharing these drug inventories would be "tantamount to disclosing . . . medical diagnos[e]s" of certain members of Congress (or others treated by the Office of Attending Physician). *Id.* at 1465. In support, the government offered an ex parte affidavit that explained how specific drugs on the list were linked with specific diagnoses. *Id.* We remanded for the district court to consider whether the inventories should be redacted, and, crucially for present purposes, ruled that the district court could rely on the ex parte affidavit. *Id.* at 1469.

Acknowledging our discomfort with ex parte affidavits, we explained that FOIA cases as a class present an unusual dilemma: "[the government] knows the contents of the

withheld records while the [plaintiff] does not; and the courts have been charged with the responsibility of deciding the dispute without altering that unequal condition, since that would involve disclosing the very material sought to be kept secret." *Id.* at 1471. Given this, "[t]he [judicial] task" in a FOIA case "can often not be performed by proceeding in the traditional fashion." *Id.* Therefore, we held, a district court may receive an ex parte affidavit if and only if "(1) the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted." *Id.*

These criteria were met in *Arieff*. Because the only way for the government to demonstrate why a given drug was uniquely linked to a specific disease was through the submission of evidence that "would of necessity disclose the name of the drug itself," the district court properly allowed the government to file its expert's affidavit ex parte. *Id.* Of course, that meant that the journalist's expert had no idea which drugs were on the list, so he resorted to "cit[ing] examples of drugs which, although widely prescribed for particular medical conditions and often associated with those conditions, are also used in the treatment of other [conditions]." *Id.* at 1465. Ex parte presentation thus denied the journalist's expert the opportunity to join issue with the government's expert. Even so, we approved the district court's reliance on the ex parte submission because that was the only way the court could evaluate the government's invocation of Exemption 6 without jeopardizing the very privacy interests the government sought to protect.

More recently, we applied *Arieff* in *Montgomery v. Internal Revenue Service*, 40 F.4th 702 (D.C. Cir. 2022), where FOIA plaintiffs sought to obtain IRS records regarding

potential whistleblowers. Denying the request, the IRS explained that whether any whistleblowers even existed was a fact protected from disclosure by FOIA Exemption 7(D). *See* 5 U.S.C. § 552(b)(7)(D) (exempting from FOIA's reach "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to disclose the identity of a confidential source"). Although the district court agreed, it held that the government must still prove either that no responsive records existed (*e.g.*, because there were no whistleblowers) or that all responsive records involved whistleblowers who had been assured confidentiality. Of course, the government had no way to reveal which of those two things was true without also revealing whether a whistleblower existed, so the district court authorized the filing of in camera declarations, and we affirmed. Quoting *Arieff*, we explained that "[t]his Court has previously given a test for 'when an affidavit disclosing information assertedly exempt from production under the FOIA is proffered,'" and "[t]he district court properly applied this test." *Montgomery*, 40 F.4th at 713 (quoting *Arieff*, 712 F.2d at 1470).

In this case, the district court likewise applied *Arieff*. "This is one of the rare cases," the district court explained, "where the ex parte submission, with its detailed description of the nature of the withheld document and the reasons underlying the exemption, was necessary to preserve the privacy of the third party involved." *Perioperative*, 2021 WL 4476769, at *6.

Perioperative argues that instead of relying on *Arieff*, the district court should have applied the six-factor test first articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). *See Cable News Network v. FBI* (*CNN*), 984 F.3d 114, 118 (D.C. Cir. 2021) (listing the six *Hubbard* factors). The "*Hubbard* test" is our "lodestar for evaluating motions to seal or unseal judicial records." *Leopold v. United States*, 964 F.3d

1121, 1127 (D.C. Cir. 2020) (internal quotation marks and citation omitted). Invoking *Hubbard*, Perioperative argues that the "VA failed to establish adequately the basis for filing the Tierney [d]eclaration under seal, and *a fortiori* failed to show why it needed to be filed ex parte in its entirety." Appellant's Br. 24.

Perioperative is mistaken. The tests announced in *Arieff* and *Hubbard* govern two distinct questions. *Arieff* addresses whether a district court may rely on an ex parte declaration in a FOIA case. *Hubbard* addresses whether a district court must fully or partially unseal a judicial record to vindicate "this country's common law tradition of public access to records of a judicial proceeding." *Hubbard*, 650 F.2d at 314. In *Montgomery*, the FOIA plaintiffs challenged "the district court's use of in camera declarations," and we applied *Arieff*. 40 F.4th at 713. In *CNN*, the plaintiff sought to unseal a declaration in a FOIA case, and we applied *Hubbard*. *See CNN*, 984 F.3d at 118–19. Here, Perioperative argues that the district court improperly received and relied on an ex parte declaration. This is an *Arieff* issue, not a *Hubbard* issue. When the government's only recourse to vindicate an interest protected by a FOIA exemption is to file an ex parte declaration, and the government establishes that specific need under *Arieff*, it need not simultaneously justify nondisclosure under the more general balancing test required by *Hubbard*.

Perioperative—or indeed any member of the public— could move in the future to unseal the Tierney declaration pursuant to the common-law right of access to judicial records. At that point, a *Hubbard* inquiry might be appropriate. We say "might" because it is unclear to us whether the government could ever establish a specific need to file an ex parte declaration under *Arieff*, yet be unable to prevent its disclosure under *Hubbard*, at least absent some intervening change in

circumstances. Moreover, when the government's only recourse to vindicate an interest protected by a FOIA exemption is to file an ex parte declaration, FOIA might preempt any conflicting common law right to access that declaration. *CNN*, 984 F.3d at 117 n.3 (declining to decide whether FOIA "preempt[s] the common law when a document is filed ex parte and in camera in FOIA litigation to persuade the Court not to release FOIA materials"). But because these issues are unbriefed, we leave them for another day.

Perioperative insists that the district court's application of *Arieff* "defies all sense of fairness." Appellant's Reply Br. 2. Given that the district court applied the proper test, we evaluate "for abuse of discretion" its "decision to review evidence ex parte." *Labow v. DOJ*, 831 F.3d 523, 533 (D.C. Cir. 2016).

As Perioperative points out, "'party access'" to evidence "'is a hallmark of our adversary system'" that "'serves to preserve both the appearance and the reality of fairness.'" Appellant's Br. 18 (quoting *Abourezk v. Reagan*, 785 F.2d 1043, 1060–61 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987)). Even in FOIA cases, we "have been vigilant to confine to a narrow path submissions not in accord with our general mode of open proceedings." *Abourezk*, 785 F.2d at 1061. That is why *Arieff* makes clear that a district court may rely on an ex parte declaration in a FOIA case only when the government's asserted exemption cannot be evaluated through "public affidavits" or "the records themselves." 712 F.2d at 1471. To be sure, "when a district court uses an in camera affidavit, it must both make its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party." *Armstrong v. Executive Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996) (citing *Lykins v. DOJ*, 725 F.2d 1455, 1465 (D.C. Cir. 1984)). Although the district court here failed to follow that procedure, Perioperative

has failed to raise that issue on appeal. In its opening brief, Perioperative cites neither *Armstrong* nor *Lykins*, and it addresses redaction in only "the most skeletal way." *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (mentioning an argument "in the most skeletal way" will not prevent forfeiture, as it "leav[es] the court to do counsel's work, create the ossature for the argument, and put flesh on its bones") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Although Perioperative's briefs are rife with accusations of procedures that "made the . . . Star Chamber look tame," Appellant's Reply Br. 2, none of its arguments persuades us that the district court abused its discretion. That said, we understand Perioperative's frustration: the district court relied on a declaration that the company cannot see, let alone rebut. But that dilemma is inherent in those FOIA cases where, as here, an ex parte declaration is the only way to "decid[e] the dispute without . . . disclosing the very material sought to be kept secret." *Arieff*, 712 F.2d at 1471.

## III.

We turn, then, to Perioperative's challenge to the district court's conclusion that the requested document—the complaint—is covered by Exemption 6. "We review de novo a district court's decision to grant summary judgment." *Center for Auto Safety v. National Highway Traffic Safety Administration*, 452 F.3d 798, 805 (D.C. Cir. 2006) (internal quotation marks and citation omitted). "In the FOIA context," de novo review "requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure under the FOIA." *ACLU v. DOJ*, 750 F.3d 927, 931 (D.C. Cir. 2014) (alteration in original) (internal quotation marks and citation omitted). Where, as here, the government relies on an ex parte

submission, we review it with extra care, recognizing that the FOIA plaintiff has had no opportunity to challenge or rebut the government's evidence.

To carry its burden under Exemption 6, the VA must show three things. First, it must demonstrate that the withheld files are "personnel [or] medical files [or] similar files." 5 U.S.C. § 552(b)(6). Perioperative acknowledges that the complaint qualifies as a similar file, as courts construe that term.

Second, the VA must show that disclosure would "compromise a substantial, as opposed to a *de minimis*, privacy interest." *National Association of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (internal quotation marks and citation omitted). Courts have recognized a substantial privacy interest in avoiding "unwanted contact following a FOIA disclosure." *ACLU v. DOJ*, 655 F.3d 1, 11 (D.C. Cir. 2011) (collecting cases); *see Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 502 (1994) (upholding agency's refusal to disclose employees' home addresses). Of particular relevance to this case, courts have recognized that those who file complaints with the government "have cognizable personal privacy interests in maintaining their anonymity." *Prudential Locations LLC v. Department of Housing & Urban Development*, 739 F.3d 424, 434 (9th Cir. 2013) (per curiam); *see Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005) (sexual assault complaint); *Lakin Law Firm, P.C. v. Federal Trade Commission*, 352 F.3d 1122, 1122, 1124 (7th Cir. 2003) (consumer complaint to FTC).

Here, by the same token, the person who filed the complaint against Perioperative has a substantial privacy interest in maintaining in confidence the fact that he or she accused the company of wrongdoing and in avoiding unwanted contact by it. Perioperative effectively concedes as much in its

opening brief. Appellant's Br. 25 ("Certainly, names and addresses can be personal, and with respect to those matters, the balancing of public versus private interests would be required."); *see also* Oral Arg. Rec. 7:47–7:48 (calling the privacy interest "somewhat limited" but not arguing that it is *de minimis*).

Third, the VA must show that this privacy interest outweighs "the public interest in the release of the records" such that "disclosure would [cause] a clearly unwarranted invasion of personal privacy." *National Association of Home Builders*, 309 F.3d at 33 (internal quotation marks and citation omitted). "[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *American Immigration Lawyers Association v. Executive Office for Immigration Review*, 830 F.3d 667, 674 (D.C. Cir. 2016) (quoting *Department of Defense*, 510 U.S. at 495).

Perioperative argues that disclosing the complaint would contribute to an understanding of the operations of the VA because it would show "how a competitor can abuse the VA's investigatory processes by filing a false complaint for the purposes of causing harm to a competitor and then how the VA could suspend [the accused company's] ability to do business with the VA before it investigated the complaint." Appellant's Br. 13. Knowing how the VA handles complaints from competitors certainly qualifies as a public interest, but Perioperative offers nothing but speculation to suggest that a competitor filed the complaint against it. Indeed, as the VA points out, a publicly filed declaration states that "the source of the third-party complaint was an individual at an 'unaffiliated implant center.'" Appellee's Br. 23 (quoting Baxter Decl., Joint

Appendix 37). Given this, together with other material facts—on which we cannot here elaborate—contained in the Tierney declaration, we believe that the complainant's substantial privacy interest outweighs any public interest in disclosure. Accordingly, the VA has demonstrated that the complaint is exempt from disclosure under FOIA Exemption 6.

Perioperative next argues that the "VA [has] fail[ed] to establish that the responsive records are not reasonably segregable." Appellant's Br. 26. When an agency demonstrates that a record is exempt, as the VA has done, it is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. United States Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Because FOIA requesters lack access to the withheld records, they will often be unable to "rebut[] this presumption." *See id.*

According to Perioperative, "it is simply impossible that every word and punctuation mark would disclose the identity of someone!" Appellant's Br. 26. But this misapprehends the VA's FOIA obligations. It need not disclose a redacted version of the complaint if the unredacted markings would "have minimal or no information content." *Mead Data Center, Inc. v. Department of the Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977). The Tierney declaration says that that is exactly what would happen here.

Finally, explaining that it needs to see the complaint because it "want[s] to sue the[] [complainant] . . . for defamation," Perioperative argues that "the government has no right to protect someone from a libel suit." Oral Arg. Rec. 11:26–50. But Perioperative's understandable desire to unmask the complainant has no bearing on the outcome of its FOIA case. The only question is whether the VA has carried its

burden to demonstrate that the complaint is exempt under Exemption 6. It has.

## IV.

For the foregoing reasons, we affirm.

*So ordered.*