# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 4, 2025        Decided September 30, 2025

No. 23-5243

FOAD FARAHI,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-02122)

———

*Christina A. Jump* argued the cause for appellant. With her on the briefs were *Charles Swift*, *Chelsea G. Glover*, and *Samira Elhosary*.

*Christopher C. Hair*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Matthew Graves*, U.S. Attorney at the time the brief was filed, and *Brian P. Hudak* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: PILLARD, KATSAS, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

2

KATSAS, *Circuit Judge*: Appellant Foad Farahi filed a Freedom of Information Act request for his FBI file. The FBI withheld most of the records in it, and Farahi sued. After requiring the FBI to update potentially stale declarations that it had submitted, the court concluded that release of the requested records could interfere with enforcement proceedings that were pending or reasonably anticipated. The court therefore held that the records were protected against disclosure by FOIA's Exemption 7(A). We agree.

I

The Freedom of Information Act requires federal agencies to release records to members of the public upon request, unless an enumerated statutory exemption applies. 5 U.S.C. § 552(a)(3), (b). Exemption 7(A) covers records "compiled for law enforcement purposes" if their disclosure "could reasonably be expected to interfere with enforcement proceedings." *Id.* § 552(b)(7)(A). We have held that such proceedings must be "pending or reasonably anticipated." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) ("*CREW*") (quoting *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).

When withholding information under a FOIA exemption, agencies must take "reasonable steps" to "segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii); *see also id.* § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.").

II

Foad Farahi is an Iranian national who has lived in the United States since 1993. In 2002, the Department of Homeland Security placed him in removal proceedings due to

a visa overstay. At various times during his immigration proceedings, Farahi has applied for asylum, withholding of removal, protection under the Convention Against Torture, and voluntary departure. Opposing relief, DHS presented documents and live testimony from an FBI agent who "documented Farahi's connections to high-level terrorists." *Farahi v. U.S. Att'y Gen.*, No. 23-10339, 2024 WL 483601, at *1–2 (11th Cir. Feb. 8, 2024).

Farahi submitted a FOIA request for his FBI file. The agency located some 10,750 pages and 80 CDs with potentially responsive information. Farahi sued after the FBI missed the statutory deadline for responding. Over the next several years, the agency reviewed potentially responsive records, disclosed some to Farahi, and withheld most of them. Upon completing its review, the FBI moved for summary judgment in October 2019. In support, it submitted a declaration from David Hardy, the Section Chief of its Record/Information Dissemination Section (RIDS). Among other things, the Hardy declaration asserted that the withheld records were compiled for law enforcement proceedings and that their release could reasonably be expected to interfere with enforcement proceedings that were then pending or reasonably anticipated. The FBI moved to file a supplemental Hardy declaration under seal and *ex parte*. Farahi did not oppose the motion, which the district court granted in October 2020.

In November 2022, the district court addressed the summary-judgment motion. It concluded that the records were compiled for law enforcement purposes and that the FBI had "seemingly" met its burden to show that their release could interfere with pending or reasonably anticipated enforcement proceedings. J.A. 121–22. However, given the significant passage of time, the court ordered the FBI to update its assessment of whether enforcement proceedings were still

pending or reasonably anticipated.  The court also concluded that it needed more information to address segregability, for reasons it could not state on the public record.  For these reasons, the court denied summary judgment without prejudice.

The FBI submitted updated declarations and renewed its motion.  This time, the agency submitted public and *ex parte* declarations from Joseph Bender, who was then the Acting Section Chief of RIDS.  In his public declaration, Bender explained that RIDS had contacted the agent responsible for overseeing Farahi's file, who confirmed that investigations remained ongoing.  Bender's *ex parte* declaration provided more details.  Bender also provided more information addressing the district court's concerns regarding segregability.

The district court granted the renewed motion.  The court credited the FBI's confirmation "that the relevant proceedings remain ongoing." J.A. 138–39.  And based on its review of the *ex parte* submission, the court concluded that the FBI had adequately explained why exempt material was not reasonably segregable. *Id.* at 139–40.

Farahi appealed.

## III

In FOIA cases, as in all others, we review a grant of summary judgment *de novo*. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021).  The government bears the burden of showing that a FOIA exemption applies.  5 U.S.C. § 552(a)(4)(B).  To carry that burden, the FBI here must show that the withheld records were compiled for law enforcement purposes and that their disclosure could reasonably be expected to interfere with enforcement proceedings that are pending or reasonably

anticipated. *See id.* § 552(b)(7)(A); *CREW*, 746 F.3d at 1096. "Because the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998). Such deference is particularly appropriate for records implicating national security. This Court has "consistently reiterated the principle of deference to the executive in the FOIA context when national security concerns are implicated"—including specifically in Exemption 7(A) cases seeking records related to counterterrorism investigations. *Ctr. for Nat'l Sec. Stud. v. DOJ*, 331 F.3d 918, 927–28 (D.C. Cir. 2003) (*CNSS*).

The government may withhold records in their entirety "when nonexempt portions 'are inextricably intertwined with exempt portions.'" *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). "A court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Id*.

IV

The district court correctly concluded that Exemption 7(A) protects the records withheld by the FBI.

A

Exemption 7(A) applies only to records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(A). Because the FBI is a law-enforcement agency, its determination on this point is entitled to a fair measure of deference. *See*, *e.g.*, *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017); *Campbell*, 164 F.3d at 32. Still, its declarations must "establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,'" as well as a "connection

between an 'individual or incident and a possible security risk or violation of federal law.'" *Campbell*, 164 F.3d at 32 (quoting *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982)).

We agree with the district court that the FBI carried its burden here. The public Hardy declaration explained that the withheld records were compiled "in furtherance of investigations of violations of national security and international terrorism to include pending law enforcement proceedings and the subject's association with individuals directly involved in such violations." J.A. 42. The *ex parte* Hardy declaration supplied considerable detail about the nature of that investigation. And broader context confirms that assertion. In the district court, Farahi himself conceded that the FBI has investigated him for ties to one or more organizations designated by the State Department as foreign terrorist organizations as well as ties to an individual later detained as an enemy combatant and eventually convicted in federal court on charges related to terrorism. Pl.'s Mem. Opp. Summ. J., ECF Doc. 39, at 3–5. We have no doubt that the FBI carried its burden to show that Farahi's file was compiled for law-enforcement purposes.

B

Exemption 7(A) also requires that release of the withheld records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(B). We have held that this provision requires the proceedings to be "pending or reasonably anticipated." *CREW*, 746 F.3d at 1096. Ongoing criminal investigations count as "proceedings" for these purposes, *id.* at 1097–98, and the government may show such proceedings simply by attesting to their "existence," *id.* at 1099. "[S]o long as the investigation continues to gather

evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Juarez*, 518 F.3d at 59.

The district court correctly concluded that disclosure could be reasonably expected to interfere with pending or reasonably anticipated enforcement proceedings. The public Hardy declaration explained that disclosure of information regarding an ongoing investigation could reasonably be expected to interfere with it by tipping off the targets about the scope of the investigation—a widely accepted justification in Exemption 7(A) cases. J.A. 49; *see CNSS*, 331 F.3d at 929. Moreover, the declaration attested that the relevant investigation remained "ongoing." J.A. 49. Hardy's *ex parte* declaration elaborated on the investigation. And the Bender declaration confirmed that the investigation remained ongoing as of March 2023.

Farahi argues that the passage of time casts doubt on whether enforcement proceedings remained pending or reasonably anticipated. He invokes our statement in *CREW* that the "vague nature" of an assertion that investigations remain ongoing may not suffice to support the invocation of Exemption 7(A). *See* 746 F.3d at 1098. And he contends that the Bender declaration, in asserting that the relevant investigations "remain ongoing," J.A. 131, was similarly conclusory. We agree with Farahi that the Bender declaration, considered in isolation, appears surprisingly terse. But context counsels against considering the Bender declaration in isolation. As explained above, the government established the pendency of enforcement proceedings in the public Hardy declaration, which attested to their existence, and the *ex parte* Hardy declaration, which gave considerable detail about the nature and scope of the investigation. The government submitted the Bender declaration not to establish the pendency of enforcement proceedings from scratch, but only to confirm

that nothing had changed while its initial summary-judgment motion was pending. Moreover, in denying the government's initial motion for summary judgment without prejudice, the district court had already concluded the FBI "seemingly" met its burden to show pending enforcement proceedings. J.A. 122. So, the Bender declaration can reasonably be understood as an update to the Hardy declarations, not as a standalone document.

The breadth of the FBI's underlying investigation also makes plausible its representation that the investigation remains ongoing. We cannot disclose the contents of Hardy's *ex parte* declaration, but we note what the FBI publicly alleged about Farahi in his immigration proceedings: He was "a recruiter for the Egyptian Muslim Brotherhood." *Farahi*, 2024 WL 483601, at *2. He was "connected to Khaled Sheikh Mohamed and other known Al Qaeda members." *Id.* He was "linked to multiple convicted or indicted terrorists," including Jose Padilla. *Id.* And he supported "charities that financed terrorism," including the Holy Land Foundation and the Global Relief Foundation. *Id.* Based on the FBI's public and sealed declarations, we conclude that the FBI has met its burden under Exemption 7(A) to show that a "concrete prospective law enforcement proceeding" continues to exist. *CREW*, 746 F.3d at 1097 (quoting *Juarez*, 518 F.3d at 58).

C

Farahi briefly objects that the government did not adequately justify how it defined the categories of documents used to explain its withholding decisions. When an agency withholds documents on a category-by-category basis, it must use categories that are "sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied" to each category. *CREW*, 746 F.4th at 1088 (quoting *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994)).

But Farahi provides no specific explanation for why the various categories identified by the FBI were overbroad. Farahi accordingly forfeited his arguments on this score. *Khine v. DHS*, 943 F.3d 959, 967 (D.C. Cir. 2019).

V

Even if a FOIA request encompasses protected records, the agency still must take "reasonable steps" to "segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii); *see also id.* § 552(b) (agency must disclose "[a]ny reasonably segregable portion of a record"). In its second order, the district court explained that the FBI had provided a "detailed justification" for why the protected records were not reasonably segregable in Bender's supplemental *ex parte* submission. J.A. 139 (cleaned up). And it found that this submission satisfied the agency's burden on this point. *Id.*

Farahi objects that there must be some segregable and releasable information in the vast volume of responsive records. But if a small amount of non-exempt material is randomly "interspersed line-by-line throughout the document," that material is not likely to be "reasonably segregable." *Mead*, 566 F.2d at 261; *see also Perioperative Servs. & Logistics LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1069 (D.C. Cir. 2023). After all, "the focus of the FOIA is information, … not simply words which the Government has written down." *Mead*, 566 F.2d at 261 n.55. So, while Farahi is correct that individual words or phrases in the requested records might be disclosed without harming the FBI's interests, that is neither here nor there. The district court correctly concluded that no meaningful information was reasonably segregable.

Finally, Farahi complains that the district court relied too much on Bender's *ex parte* declaration in its segregability analysis. But nothing required the court to put on the public

record its analysis of that declaration.  For one thing, Farahi did not oppose the district court's acceptance of *ex parte* declarations, so he cannot challenge the district court's reliance on them.  For another, while *ex parte* declarations no doubt handicap FOIA plaintiffs, that problem "is inherent in those FOIA cases where, as here, an *ex parte* declaration is the only way to decide the dispute without disclosing the very material sought to be kept secret." *Perioperative Servs.*, 57 F.4th at 1067 (cleaned up).

## VI

For these reasons, we affirm the district court.

*So ordered.*